**IN THE COURT OF APPEALS OF IOWA**

No. 17-0347
Filed May 17, 2017

**IN THE INTEREST OF K.G., M.S., H.S., and J.M.,**
**Minor Children,**

**R.S., Mother,**
            Appellant.

_____

        Appeal from the Iowa District Court for Wapello County, William S. Owens,

Associate Juvenile Judge.


        A mother appeals from the order terminating her parental rights in her four

children.  **AFFIRMED.**


        Mary Baird Krafka of Krafka Law Office, Ottumwa, for appellant mother.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney

General, for appellee State.

        Sam K. Erhardt of Erhardt & Erhardt, Ottumwa, guardian ad litem for

minor children.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

This is an appeal from an order terminating the mother's and three fathers' respective rights in four children: H.S., born in 2005; M.S., born in 2006; K.G., born in 2013; and J.M., born in 2015.  Only the mother, Ruby, seeks appellate review.

I.

"We review proceedings terminating parental rights de novo."  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).  The statutory framework is well established.  Pursuant to Iowa Code section 232.116(1) (2016), the State must prove a statutory ground authorizing the termination of a parent's rights.  *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).  Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interests of the children.  *See id.*  Third, if the State has proved both the existence of statutory harm and termination of a parent's rights is in the best interests of the children, the juvenile court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless preclude termination of parental rights.  *See id.* These countervailing considerations are permissive, not mandatory.  *See A.M.*, 843 N.W.2d at 113.

II.

Ruby challenges the sufficiency of the evidence supporting the statutory grounds authorizing the termination of her parental rights.  The district court terminated the mother's parental rights in her two older children pursuant to section 232.116(1)(f) and in the two younger children pursuant to section

232.116(1)(h). As relevant here, section 232.116(1)(f) required the State to prove "that at the present time the child[ren] cannot be returned to the custody of the child[ren]'s parents as provided in section 232.102." Similarly, section 232.116(1)(h) required the State to prove "that the child[ren] cannot be returned to the custody of the child[ren]'s parents as provided in section 232.102 at the present time." We have interpreted these provisions to require clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016).

Previously, Ruby was involved with the department of human services in another proceeding. As relevant to this proceeding, the family came to the attention of the department in June 2014 following a report of domestic violence involving Ruby and her paramour Nick. One of the children suffered injuries during this incident. During the course of the department's investigation, Ruby tested positive for methamphetamine. The children were removed from her care in September of 2014 on concerns of domestic violence in the home, illegal substance abuse in the home, and Ruby's erratic behavior. Ruby's erratic behavior worsened, and she was hospitalized in October 2014 for mental-health needs. Specifically, Ruby suffered from delusions/hallucinations. Shortly after her release from the hospital, Ruby commenced a romantic relationship with Gary and moved in with him. In March 2015, Ruby moved out of the residence she shared with Gary. At that time, Gary reported Ruby had been using methamphetamine. Initially, Ruby denied it. However, in June 2015, Ruby admitted using methamphetamine, and she asked the department for assistance

in entering a residential treatment program. At the time she admitted to methamphetamine use, she was pregnant with J.M., whose father is Gary.

After her request for assistance, Ruby was admitted into a residential treatment facility. H.S., M.S., and K.G. were returned to her custody and care. In July 2015, J.M. was born. He was hospitalized on three separate occasions shortly after his birth for failure to thrive. It is unclear whether some of the child's medical issues were caused by Ruby's methamphetamine use during her pregnancy. What is clear is that Ruby was unable to provide basic care and feeding for the child without prompting and supervision. During this same time period, Ruby began to miss her scheduled appointments and sessions in the residential treatment facility. Facility staff warned Ruby that she would be discharged if she continued to miss her scheduled appointments and sessions. The residential treatment facility discharged Ruby on October 29, 2015, after she had missed nineteen scheduled appointments—including seven consecutive appointments. The children were again removed from Ruby's custody and care. They have not been returned to her care.

From the time of the second removal until the termination hearing in November 2016, Ruby failed to meaningfully address the issues giving rise to removal and failed to demonstrate the capacity to have custody and care of the children. In December 2015, she was arrested on charges of possession of methamphetamine and felon in possession of a firearm. Thereafter, she failed to obtain stable employment, housing, or transportation. She failed to treat her mental-health conditions. Her visitation with the children was irregular. She repeatedly declined visitation with her newborn child, J.M.

In particular, Ruby failed to make sustained progress in addressing her substance abuse. While she testified at the termination hearing that she had not used since September 2016, her testimony could not be confirmed because she had not been subject to testing. Ruby admitted, however, that she used methamphetamine on a regular basis between her discharge in October 2015 and September 2016. In her own words, her use was "very heavy," meaning "[e]very day, all day." She was given two opportunities to participate in another residential treatment program, but she failed to take advantage of either opportunity. On the second occasion, Ruby declined to participate because her transportation to the facility was scheduled to leave at 7:00 a.m. Ruby declined to participate in the treatment program because she was using at the time and knew that she would not be able to wake up by 7:00 a.m. In October 2016, Ruby participated in a non-residential treatment program for eleven days and then quit against medical advice. At the termination hearing, Ruby testified she had another substance-abuse evaluation scheduled for the day after the termination hearing. This could not be confirmed because Ruby would not sign the release necessary to verify the information.

On de novo review, we have little trouble concluding the State proved the children could not be returned to Ruby's custody at the time of the termination hearing without exposing the children to an appreciable risk of adjudicatory harm. Ruby has a long history of untreated mental-health conditions and methamphetamine abuse that interferes with her ability to care for the children. *See, e.g., In re J.A.*, No. 16-1512, 2016 WL 6396074, at *2 (Iowa Ct. App. Oct. 26, 2016) (affirming termination despite mother's request for additional time

where mother "failed to address her substance-abuse issues over the course of several years" and "now faces an impending criminal indictment for methamphetamine distribution"); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights despite father's request for more time where father had a history of substance abuse and there was "nothing to indicate he could resolve the problem and provide constant and reliable care for the child outside a supervised setting"); *In re C.M.*, No. 14-1140, 2015 WL 408187, at *4–5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents sought more time but evidence established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights where the father had history of substance abuse); *In re J.L.*, No. 02-1968, 2003 WL 21544226, at *3 (Iowa Ct. App. July 10, 2003) (concluding relapse of parent despite offer of services supported termination of parental rights); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." (citation omitted)).

While Ruby testified she had made some progress in the last month or so prior to the termination hearing, even assuming that to be true, a parent's last-minute rush to address longstanding–unaddressed concerns is insufficient to

preclude the termination of parental rights. *See In re A.E.*, No. 16-0510, 2016 WL 3271887, at *3 (Iowa Ct. App. June 15, 2016) ("After sleepwalking through the first three quarters of this case, Maranda's furious fourth-quarter rally falls short."); *In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where "mother's late progress in the case did not begin until after the State filed its petition seeking termination of parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights."); *In re I.V.*, No. 15-0608, 2015 WL 4486237, at *2–3 (Iowa Ct. App. July 22, 2015) (holding "last-minute" use of services for litigation purposes was insufficient to demonstrate the child could be returned to the mother's care). It is well-established that "[a] parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

Related to Ruby's challenge to the sufficiency of the evidence, Ruby contends the State failed to make reasonable efforts to reunify her and the children. As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(7) (providing department of human services must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of

termination which require reunification efforts." *C.B.*, 611 N.W.2d at 493. The core of the mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable efforts mandate is determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493.

Ruby's challenge to the department's reasonable efforts fails. First, she failed to object to or request additional services during the life of the case. Thus, she has not preserved the issue for review. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (stating a parent must make such a challenge "at the removal, when the case permanency plan is entered, or at later review hearings" and voicing complaints to a social worker is not sufficient to preserve error); *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting that while the State has an obligation to make reasonable efforts to preserve the family, it is a parent's responsibility to demand other, different, or additional services in order to preserve error). Second, this is not a case in which the department failed to make reasonable efforts. The department extended numerous services to the Ruby, the fathers, and the children, including, but not limited to, the following: Family Safety, Risk and Permanency services; foster care; relative care; family treatment court; psychological evaluation services; substance-abuse testing; outpatient substance-abuse treatment; inpatient substance-abuse treatment; random drug testing; mental-health services; visitation services; and transportation services. The State satisfied the reasonable efforts requirement. *See, e.g., In re B.G.*, No. 15-0732, 2015 WL 5996936, at *4 (Iowa Ct. App. Oct. 14, 2015) (holding the

State established reasonable efforts where services were provided but the mother did not avail herself of the services); *In re B.B.*, No. 12-0807, 2012 WL 2408714, at *3 (Iowa Ct. App. June 27, 2012) ("Considering the number and variety of services offered or provided, the delays in or failure of services attributable to the mother, the age of the child, and the length of time the child has been removed from the mother's care, we find the State made reasonable efforts to reunite the mother with her daughter.").

Ruby also challenges whether the State proved termination of her parental rights is in the best interests of the children. In deciding the issue, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "We consider what the future holds for the child[ren] if returned to [their] parents." *In re R.M.*, 431 N.W.2d 196, 199 (Iowa Ct. App. 1988) (citing *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). As a general rule, it is not in the best interests of the children to return to a parent who refuses to address the department's primary concerns. *See In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa Ct. App. 1988).

The children's physical, mental, and emotional needs can be best met by terminating Ruby's parental rights. Ruby has not successfully treated her addiction to methamphetamine. She has not treated her mental-health conditions. She has shown an inability to provide for the basic needs of the children, including food, shelter, and medical treatment. Ruby's inability to provide for the basic needs of the children is of particular concern because the children have heightened needs. M.S. is diagnosed with oppositional defiance

disorder, anxiety disorder, and post-traumatic stress disorder. H.S. has a physical condition that causes skeletal deformities. J.M., the youngest child, has a variety of physical conditions, including a heart defect and optic nerve hypoplasia, which causes legal blindness. The children are progressing in their current placements, receiving appropriate emotional support, mental-health treatment, and physical care. Their emotional, mental, and physical health would be placed at risk if returned to the mother.

We cannot ask these children to continuously wait for Ruby to become a stable parent. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *P.L.*, 778 N.W.2d at 41)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) (citing *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997)). We have reached that point. These children should not be made to wait any longer for proper support and care.

III.

For the foregoing reasons, we affirm the order terminating the mother's parental rights in her children.

**AFFIRMED.**