# IN THE COURT OF APPEALS OF IOWA

No. 21-0192
Filed August 4, 2021

**IN THE INTEREST OF F.W., H.W., C.W., and B.W.,**
**Minor Children,**

**J.W., Mother,**
        Appellant,

**R.W., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, District Associate Judge.

The mother and father separately appeal the termination of their parental rights to four children.  **AFFIRMED ON BOTH APEALS.**

Bryan Webber of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Bryan J. Tingle, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Kathryn K. Lang, Assistant Attorney General, for appellee State.

Arielle M. Lipman of Lipman Law Firm, P.C., West Des Moines, attorney for minor children.

Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, guardian ad litem for minor children.

Considered by Tabor, P.J., Schumacher, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**POTTERFIELD, Senior Judge.**

The mother and father separately appeal the termination of their parental rights to four of their children, born between 2007 and 2012.[1] The family came to the attention of the Iowa Department of Human Services (DHS) in March 2019 when a fifth child, Co.W., was seen in the family home with bruises on each of his cheek bones that were yellowish in color. After further examination, it was determined Co.W. also had injuries to his lower back, legs, and other injuries in various stages of healing throughout his body, and he appeared to be malnourished. In the court's order adjudicating Co.W. CINA, it found he "suffered horrific and systematic abuse rising to the level of torture." Both parents were eventually convicted of crimes relating to the abuse. The father is serving an indeterminate thirty-year sentence for his role,[2] while the mother was convicted of child endangerment causing bodily injury and received a suspended prison sentence. The parents both voluntarily gave up their rights to Co.W. in May 2020.

As to the four children at issue here, the juvenile court terminated both parents' rights to all four under Iowa Code section 232.116(1)(f) (2020). The father argues termination of his rights is not in the children's best interests and the court should apply a statutory exception to termination. He contends that rather than

---

[1] The parents have a number of children—some who are their biological children and others who they adopted. Some of the children have reached the age of majority. And the parents consented to the removal of another child, Z.W., who has been adjudicated a child in need of assistance (CINA) and placed in a residential facility for treatment of sexually aggressive behaviors. By October 2020—the final date of the termination hearing for the children at issue—it was not clear the parents had any ongoing contact with Z.W.

[2] As part of a plea deal, the father pled guilty to the reduced charges of two counts of neglect or abandonment of a dependent person and two counts of child endangerment resulting in serious injury—all class "C" felonies.

terminating his parental rights, the court should have transferred sole custody of the children to the mother. The mother challenges the statutory ground for termination, argues the loss of her rights is not in the children's best interests, and maintains the court should have applied a statutory exception to termination. Alternatively, she asks for an extension of time to work toward reunification or the establishment of a guardianship in lieu of termination.

We review the termination of parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). Because "in termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally," we consider the mother's and father's appeals separately. *In re D.G.*, 704 N.W.2d 454, 459 (Iowa 2005).

**I. Father's Appeal.**

In late 2019, the father was sentenced to a term of imprisonment not to exceed thirty years for his abuse of Co.W. In spite of the fact that he pled guilty to all four of the crimes for which he was convicted, recorded phone calls the father made from prison (that were entered into evidence at the termination hearing) reveal the father has yet to internalize the harm and trauma he caused not only to Co.W. but also to the four siblings at issue here. *See In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa 1988) ("[T]he requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs."). Additionally, the father cannot provide these children safety or a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (recognizing the "defining elements" of a child's best interests); *see also* Iowa Code § 232.116(2). This inability is a direct result of his felonious actions harming another child in the

family home. *See* Iowa Code § 232.116(2)(a) (providing that when considering the children's best interests, the court may consider "[w]hether the parent's ability to provide [for] the needs of the child is affected by . . . the parent's imprisonment for a felony"). And, while the father maintains loss of his rights is not in the children's best interests because it will cost the children his financial support, we are not convinced by this argument. First, "when termination of parental rights occurs, other sources of financial support for the child may become available, and we do not read section 232.116(2) as directing courts to engage in a dollar-for-dollar weighing process." *H.S.*, 805 N.W.2d at 748. But also, the children at issue will likely reach the age of majority before the father is released from prison, and his claimed ability to offer financial support while imprisoned is dubious at best.[3] Termination of the father's parental rights is in the children's best interests.

Next, the father argues the juvenile court should have applied a statutory exception to termination to save the parent-child relationship. He focuses on section 232.116(3)(a), (b), and (c). Paragraph (a) allows the court to forego termination when a "relative has legal custody of the child." Iowa Code § 232.116(3)(a). Paragraph (b) is implicated when a "child is over ten years of age and objects to the termination." *Id.* § 232.116(3)(b). And paragraph (c) can be applied to save the parent-child relationship when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c). The parent has the burden under section 232.116(3). *In re A.S.*, 906 N.W.2d 467, 476 (Iowa

---

[3] In the prison phone calls admitted at the termination hearing, the father repeatedly asks others to put money on his prison account.

2018). Even if the parent establishes an exception to termination, the court has discretion in deciding whether to save the parent-child relationship. *See id.* at 475 ("A finding of any of these factors allows the court to avoid terminating parental rights, but the factors 'are permissive, not mandatory.'" (citation omitted)). In making the decision, the court considers the "unique circumstances of each case and the best interests of the child." *Id.* (citation omitted).

Here, two of the four children were placed with an adult sibling, but it is not clear section 232.116(3)(a) applies.[4] And while the two oldest children—ages thirteen years and twelve years at the time of the termination hearing—testified, it seems their objections were limited to the termination of the mother's rights. The oldest child testified she was asking the court to let her "go live back with my mom." And the twelve-year-old testified she was asking the court to "let us go back home"—of course the father is in prison, not at the family home. Moreover, all four children were represented by an attorney (separate from the guardian ad litem), and their attorney filed a written closing argument, stating, "[F.W.] and [H.W.], who are both over the age of ten years old testified they wished to be returned home to their mother. [C.W.] and [B.W.], although not yet ten years old, share the same sentiment." Each of these statements is silent as to the father's parental rights. *See* Iowa Code § 232.116(3)(b). And finally, no evidence of the children's bond with the father was offered at trial. *See id.* § 232.116(3)(c). As the juvenile court concluded, under the circumstances of this case "any applicable exceptions do not

---

[4] We have found nothing in the record stating the older brother was given legal custody of H.W. and B.W. *See A.M.*, 843 N.W.2d at 113 (finding section 232.116(3)(a) inapplicable because the child was in the care of, but "not in the legal custody of her grandparents").

outweigh the best interests of the child[ren] which require termination of the [father's] parental rights so that permanency and stability can be provided to the child[ren]."

The father also argues sole custody of the children should have been transferred to the mother rather than terminating his parental rights. *See* Iowa Code §§ 232.104(2)(d)(2), .117(5). But because the mother was also subject to these termination proceedings, this argument requires the father to make assertions on behalf of the mother as to why her rights should not be terminated. The father does not have standing to make these arguments, and we do not consider them. *See, e.g.*, *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (providing the father did not have standing to assert an argument on the mother's behalf "in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights"); *In re C.T.*, No. 18-2199, 2019 WL 1055897, at *1 n.1 (Iowa Ct. App. Mar. 6, 2019) (collecting cases where the court has "rejected challenges to the termination of one parent's rights based solely on the asserting that the child could or should be returned to the other parent").

We affirm the termination of the father's parental rights to these four children.

**II. Mother's Appeal.**

The juvenile court terminated the mother's rights under section 232.116(1)(f), which requires the State to prove a number of things, including that the children could not be safely returned to the parent's care at the time of the

termination hearing.[5] *See* Iowa Code § 232.116(1)(f)(4). The mother maintains the children could be returned to her care because she "has an appropriate residence, is employed, has a driver's license, and dutifully attends the visits she is allowed." She also claims she made enough progress in therapy to gain insight regarding her "prior conduct."[6]

We disagree. It seems the mother was technically employed at the time of the termination hearing, but she had not been able to perform her job at a hotel for approximately eight weeks due to injuring her leg. She was not receiving disability or unemployment, and there was no testimony about when she would be able to return to work. To help cover her bills, the mother had allowed her adult daughter, the adult daughter's wife, and their three children[7] to move into the family home with her. The adult daughter and wife had applied to become foster parents earlier in the proceedings and were denied based on concerns regarding the adult daughter's untreated mental-health issues, substance abuse, collaboration with

---

[5] The State contests error preservation. We recognize that when she was first asked if she wanted the children returned to her on the day of the termination hearing, the mother responded, "No. I'm asking for an extension." However, the mother later clarified she believed she could have the children returned that day but she thought it was best for the children if she first "could be involved more in their therapy and their trauma and things like that."

[6] The mother also claims "the denial of her request to return the children violates her due process rights and equal protection rights under the United States Constitution and Iowa Constitution." If the mother raised these arguments to the juvenile court, she did not get a ruling on them, so they are not preserved for our review. *See In re A.B.,* 815 N.W.2d 764, 773 (Iowa 2012) ("First, the general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."); *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

[7] The adult daughter is the stepmother of the three children; the wife conceived them during breakups in their relationship.

the mother, financial instability, and statements made by the adult daughter that if her siblings were permanently in her care, she would allow the mother full access to them. DHS expressed concern the adult sister was aware of the abuse of Co.W. as it was occurring and both failed to report it and continued to fully support the mother and father, believing they did nothing wrong. At the termination hearing, the mother testified the adult daughter's family would "be gone" if the court returned the children to her care, but the question is whether the children can be returned at the time of the termination hearing, not once the parent makes some future change. *See In re Z.P.*, 948 N.W.2d 518, 524 (Iowa 2020) (listing reasons, such as lack of child care and appropriate sleeping arrangements, why parent "was not in a position to take custody of [the child] at the time of trial" and affirming termination). Plus it is not clear the mother would be able to afford her bills if the adult daughter's family moved out.

Additionally, while it is undisputed the mother made some progress in therapy and began to take some accountability for the abuse in the family home, we cannot say she is now ready to safely parent these children. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new [CINA] adjudication); *see also* Iowa Code § 232.116(1)(f)(4). At the termination hearing, the mother testified that she recognizes her role in the trauma experienced by these children due to her failure to keep Co.W. safe and allowing the father's abuse of him to continue. But the mother's admissions involve

her playing a passive role in the abuse.[8]  According to the testimony of the DHS social worker, at least two of the children have indicated the mother had more than a passive role in their physical abuse.  The social worker testified Co.W. "has been the most vocal" about suffering physical abuse at the hands of the mother, but F.W. also "indicated . . . that there were some things that she wanted to process and her nightmares that she was having had to do with things that [the mother] had done to her."  The mother took responsibility for her role in "showing [the children] that [she] wasn't protective" when she allowed the father to abuse Co.W. in the home, but that is not enough.  *See In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002) ("A parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of the children.").  The children could not be returned to the mother's care at the time of the termination hearing.

The mother maintains the loss of her parental rights is not in the children's best interests.  *See* Iowa Code § 232.116(2).  But these children had been out of the home approximately nineteen months at the time of the termination hearing, and "[o]nce the limitation period lapses, termination proceedings must be viewed with a sense of urgency."  *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).  "It is past time to terminate her relationship with the children."  *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987).

Next, the mother argues the court should apply a permissive factor to save the parent-child relationships.  We recognize that both of the children over ten years old objected to the termination of the mother's parental rights.  But their

---

[8] The mother did admit to slapping Co.W.; she characterized it as a form of corporal punishment rather than abuse.

wishes, while relevant and not to be ignored, are not controlling. *In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019). The controlling consideration is what is in the children's best interests, and "[t]he best interests of a child is not always what 'the child wants.'" *Id.* (citation omitted). Moreover, while the children are bonded to the mother, there is a question as to how healthy that bond is. While in the parents' home, the children were required to maintain a number of unhealthy secrets, and the children initially blamed Co.W. for the family being separated— taking the side of the abusive adults rather than their mistreated sibling. Like the juvenile court, we conclude the circumstances of this case do not warrant the application of a statutory factor to save the mother's relationships with the children.

The mother asks for more time to work toward reunification with the children. The court can delay permanency for six months under section 232.104(2)(b) if it finds the need for removal will no longer exist at the end of the extension. The social worker opined, and the juvenile court agreed in its written ruling, "that a six month extension would not be enough time for [the mother] to make the . . . changes necessary to safely parent the children." Nothing in the record convinces us the juvenile court should have given the mother more time.[9]

_____

[9] Insofar as the mother links this to a motion for reasonable efforts, we note that the first day of the termination hearing took place on July 29, 2020, and the mother's motion for reasonable efforts was not filed until October 2—more than two months after the termination hearing began and only six days before the second day of the termination hearing took place. This is too late to preserve error. *See, e.g.*, *In re P.L.*, No. 19-0103, 2019 WL 1294809, at *1 (Iowa Ct. App. Mar. 20, 2019) ("Insofar as the mother requested new or different services one day before the termination hearing, we find this failed to preserve for our review the issue of reasonable efforts. Although the mother technically informed the court before the termination hearing, her attempt to get in under the wire is insufficient. . . . The purpose of requiring a parent to notify the court about a perceived issue with services before a termination hearing is because of 'the importance for a parent to

Finally, the mother argues the court should have established a guardianship where all four children could be together in lieu of terminating her parental rights. But "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477. And we think a clean break from the parents is in these children's best interests. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("Although a guardianship may provide some permanency, it does not necessarily provide stability for the child. So long as parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody.").

We affirm the termination of the mother's parental rights to all four children.

**AFFIRMED ON BOTH APPEALS.**

---

object to services early in the process so appropriate changes can be made.'" (citations omitted)).