# IN THE COURT OF APPEALS OF IOWA

No. 22-0107
Filed May 11, 2022

**IN THE INTEREST OF M.A., M.G., and M.C.,**
**Minor Children,**

**M.A., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.

　　The mother appeals the termination of her parental rights. **AFFIRMED.**

　　Reyna L. Wilkens of Wilkens Law Office, Fort Madison, for appellant mother.

　　Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

　　Heidi D. Van Winkle of The Van Winkle Law Office, Burlington, attorney and guardian ad litem for minor children.

　　Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**BOWER, Chief Judge.**

The mother appeals the termination of her parental rights to M.A., born in 2012; M.G., born in 2017; and M.C., born in 2019.[1] Because no extension is warranted, grounds for termination exist, it is in the children's best interests, and no permissive exception suggests termination is not appropriate, we affirm.

**I. Background Facts.**

The children were removed from the mother's care in July 2020 after the Iowa Department of Human Services (DHS) received a report M.A. was physically abused by the mother. During a Child Protection Center (CPC) interview, M.A. described the mother hitting him with her fist, a belt, an extension cord, a broom, and the hose of a vacuum cleaner. Photographs taken depicted M.A.'s numerous scars and injuries in different stages of healing all over his body. The physical examination noted all of these injuries could not be accidental. M.A. and M.G. were placed in foster care, and M.C. was placed with his father.

On September 16, the children were adjudicated children in need of assistance (CINA) due to physical abuse to M.A. and risk of physical abuse to M.G. and M.C., as well as the presence of an illegal drug in M.A.[2] The court confirmed the children's removal from the mother's custody, and the children remained in out-of-home placements with the goal of reunification with the mother.

---

[1] The parental rights of the putative fathers to M.A. and M.G. were also terminated, and neither appeals.
[2] A hair stat test was positive for marijuana.

The mother was charged with four counts of child endangerment. She denied abusing her children but participated in services offered by DHS and affiliates.

A permanency hearing was held on July 1 and August 13, 2021. On August 31, the juvenile court found:

> During the life of this case, [DHS] has provided numerous services to the children's mother in attempts to address the physical abuse of the children while in her care, her lack of parenting skills, and her lack of appropriate parent-child interaction. Although the children's mother . . . participated in these services, she has not fully engage[d] herself to address the adjudicatory harms.
> The court notes the adjudication order entered September 16, 2020, and the extreme physical abuse inflicted on [M.A.] by his mother . . . . [who] continues to deny any physical abuse of her children, including the trauma this physical abuse has inflicted on her children. Throughout parenting skill sessions, [the mother] has refused to utilize the positive parenting techniques being taught, and instead, calls her children "fucking retard," "cry baby," "punk," and "gay," and has threatened to "knock out" [M.A.] and that "he needed a popping," all during supervised visitations with [the Family Support Specialist (FSS)] present. Additionally, [the mother] has refused to acknowledge her substance abuse issues in the face of a positive marijuana test for both herself and [M.A.], and instead has blamed [M.A.] for his positive drug test.

The court concluded the children would not be safe if returned to the mother then—or with an additional six months of services—and ordered the filing of petitions to terminate the parental rights of the mother.[3]

On September 20, the mother pleaded guilty to two counts of child endangerment. The mother admitted she intentionally struck seven-year-old M.A. with an extension cord at least once, hitting him in the head, which caused him

---

[3] The court also ordered termination-of-parental rights petitions to be filed for the fathers of M.A. and M.G., who each lived in another state and had not participated in any services.

pain, and struck him with the extension tube of a vacuum cleaner at least once, hitting him on the back, which caused him pain. The other two child-endangerment counts were dismissed.

The termination-of-parental-rights hearing was held on November 17, and the mother testified.[4] The juvenile court characterized the mother's testimony as acknowledging

> she was not calm and overreacted to situations in the home where she hit [M.A.] in the nose with a belt[5] and also struck him in anger with a hand-held vacuum cleaner, extension cord, and broom handle[6] and also drug him up the stairs resulting in a carpet burn on his back. When addressing the trauma her children have experienced, [the mother] stated her belief that both [M.A.] and [M.G.] have been more traumatized by the removal from her care and the intervention of [DHS] than by any physical abuse they have endured while in her care.

The court listed the services provided to the mother, noting the services "were specifically geared with the understanding that [she] had pending criminal charges and were presented with generalities instead of forcing her to admit to specific allegations of abuse." Both the DHS case manager and FSS provider noted that though the mother participated in the programs offered, she did not want to deal with the trauma she had inflicted upon the children and her testimony was the first time they had heard the mother acknowledge any abuse of the children.

---

[4] She gave birth to another child before the termination hearing. These proceedings do not address the mother's rights regarding that child.

[5] The evidence shows the mother folded the belt over twice and struck M.A. in the nose with the belt buckle. The injury on the end of his nose was not treated and has left noticeable scar tissue.

[6] M.A. described his mother breaking the broom's handle and jabbing him with it, which left a noticeable scar on his arm. M.A. also stated his mother struck M.G. in the head with the broom, and service providers noted M.G. has a "dent" on his head.

The court terminated the mother's rights with respect to M.C. under Iowa Code section 232.116(1)(h) (2021) and with respect to M.A. and M.G. under section 232.116(1)(f). The mother appeals.

## II. Scope of Review.

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

## III. Discussion.

*Extension.* We first address the mother's claim the juvenile court erred in not granting her another six months to seek reunification. She asserts the issue is preserved by seeking an extension in the permanency hearing and at termination.

The mother did ask for more time at the permanency hearing, and the juvenile court found the extension was not warranted in its August 31 ruling. The juvenile court noted M.A. "has been forthcoming" with service providers about "the physical abuse he has suffered at the hands of his mother, citing instances of being hit with a vacuum cleaner, broom, and cords; hit in the nose causing an embarrassing scar; thrown down the stairs; locked in a closet or his bedroom; and withheld food." The court also noted M.A.'s concerns for M.G. because his mother had hit him with a broom and shoved him down the stairs.

The mother asserts the "biggest barrier" to her "success was the fact that she asserted her constitutional right against self-incrimination in her pending criminal matters." She implies that because those criminal proceedings are now concluded, she should be given more time to seek reunification.

Our courts have observed that "[w]hile the State may not specifically require an admission of guilt as part of treatment because it impinges a person's right

against self-incrimination, 'a person's exercise of a constitutional right *may* indeed have consequences' in the parental rights realm." *In re D.D.*, 955 N.W.2d 186, 195 (Iowa 2021) (Christensen, C.J., concurring specially) (quoting *In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002)).

Here the juvenile court found:

> The court finds that [the mother] did have the right against self-incrimination throughout the underlying CINA action due to her pending criminal charges and does not penalize the mother for exercising this right. However, with this right comes certain consequences, of which is her failure to address and internalize her role in the abuse of her children and the resulting physical, mental, and emotional trauma to her children. Although [the mother] has participated in the services offered to her, the court finds the mother has essentially checked the boxes and went through the motions without fully internalizing the extreme abuse she inflicted on her children and their resulting mental and emotional issues. [She] continues to minimize the abuse inflicted on her children and blames [DHS] for [M.A.]'s and [M.G.]'s continued trauma and subsequent behaviors. [She] has not fully embraced the services offered to her to ensure the safety of the children if returned to her care and her deficiencies in her parenting and discipline techniques. . . . [M.A.] is a young child covered with physical scars at the hands of his mother. These are the scars we can see. The emotional wounds we cannot.

Even after tailored services, the court concluded "the mother's lack of acknowledgment of the physical and emotional abuse she inflicts on her children places all three children in immediate risk of continued physical and emotional harm and/or death if they are returned to her care." The court was not convinced an extension of time would result in the children's return "because of the lack of any progress toward reunification made by the children's mother."

The mother made no request for an extension at the time of the termination hearing. We will pass on whether the request should have been made to preserve

error,[7] because even after three more months, the mother had made little progress beyond minimally acknowledging the abuse:

> Q. Shifting back to the case involving these three kids, what is the reason that you are involved with DHS?  A. Because of child abuse.
> Q. Can you be more specific?  A. Um, because, um, child abuse.
> Q. On which child?  A. [M.A.]
> Q. Any on [M.G.]?  A. No.
> Q. Any on [M.C.]?  A. No.
> Q. And when you say "child abuse," can you tell us what you mean by that?  A. For—I mean, like, um, not disciplining the right way.

The State pursued what the mother meant by "not disciplining him the right way," and the mother eventually acknowledged she was angry and struck M.A. with a belt and a vacuum hose.

> Q. So all you can remember hitting your child with were—was a belt in the nose and then one time in the bottom with a vacuum cleaner; is that right?  A. Uh-huh.
> Q. Have you seen the CPC pictures?  A. Yeah, I did, but, um, my child is very clumsy, and I—when they play outside they hurt themselves and get scratches and everything like that.
> Q. So the many, many scars all over [M.A.] that were seen at the CPC, you're saying the only one that you're saying you inflicted was the nose; is that right?  A. And then there was one on his back, too, like when he wasn't listening and, you know, and go to bed.  And then the stairs, like, I drug him up the stairs by his arm and he scraped his back.
> . . . .
> Q. You drug him up the stairs?  And when did that occur in reference to when the CPC interview was?  A. That happened like way—like months before that.
> Q. So you're saying that a carpet burn that he received was still there months later?  A. Yeah, that I can remember.  Because it was the day that it happened, it wasn't nothing going on.  I got him with—didn't with him that day or nothing.

---

[7] *Cf. In re T.R.*, 705 N.W.2d 6, 11 (Iowa 2005) ("[T]he portion of the permanency order . . . directing the county attorney to institute termination proceedings is not a final appealable order.")

Q. So the day that DHS— A. That wasn't like a normal thing that I would do anyway.

This minimal acceptance of partial responsibility after the mother participated in a more than a year of services and parenting programs weighs against granting the mother more time. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct."). The juvenile court properly denied the mother's request for a six-month extension.

*Grounds for termination.* The two paragraphs the juvenile court found were proved are applicable to different ages of children and require a different statutory period of out-of-home placement. *See* Iowa Code § 232.116(1)(f), (h). Paragraph "h" governs when a child who is three years of age or younger has been adjudicated CINA, been out of parental custody for at least six of the last twelve months, and cannot be returned to the parent's custody at the present time. Paragraph "f" governs when a child who is four years of age or older has been adjudicated CINA, been out of parental custody for at least twelve of the last eighteen months, and cannot be returned to the parent's custody at the present time. "At the present time" means at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The mother argues the children can be returned to her custody at present. We disagree.

The mother's visits have not moved beyond supervised visits. Even during supervised visits the mother cruelly berated M.A. and threatened physical contact. After more than a year of services, the mother continues to minimize her physical abuse of M.A., denies abuse of M.G., blames DHS for the children's trauma, and

fails to recognize the effect her abuse has had on the children. "Our caselaw has long acknowledged 'the requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs.'" *D.D.*, 955 N.W.2d at 196 (Christensen, C.J., concurring specially) (quoting *In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa Ct. App. 1988)). We conclude there is clear and convincing evidence returning the children to the mother's custody at the time of the termination hearing would place them at imminent risk of harm.

*Best interests.* Giving primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs, *see* Iowa Code § 232.116(2)(a), we conclude termination of the mother's rights is in the children's best interests. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.") These children are doing well and have integrated into their current placements. *See* Iowa Code § 232.116(2)(b). It is time to afford them the permanency and stability they deserve.

*Permissive exceptions.* The mother contends that if grounds for termination exist, termination should be avoided under exceptions provided Iowa Code section 232.116(3)(a) (M.C.) and (c) (all children). The exceptions to termination provided in section 232.116(3) "are permissive, not mandatory." *A.S.*, 906 N.W.2d at 475 (citation omitted). Simply because M.C. is in his father's custody does not countermand our conclusion that termination of the mother's rights is in the child's best interests. The mother provides no compelling reason why we should elect to

apply section 232.116(3)(a) to preclude termination. *See id.* at 476 (noting it is the parent's burden to prove an exception to termination). And we agree with the juvenile court that while there is a bond between the children and the mother, "the bond is riddled with physical, mental, and emotional abuse." We will not apply section 232.116(3)(c) here.[8] We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[8] A court "need not terminate" the parent-child relationship if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).