## IN THE COURT OF APPEALS OF IOWA

No. 22-2095
Filed March 29, 2023

**IN THE INTEREST OF O.W.,**
**Minor Child,**

**W.W., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A father appeals the termination of his parental rights to one child. **AFFIRMED.**

Alexandra M. Nelissen of Advocate Law, PLCC, Clive, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Nancy Pietz, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

W.W. appeals the termination of his parental rights to one child, O.W. He contends that the statutory ground is unsatisfied, termination does not serve the child's best interests, and exceptions to termination should have been applied. Upon our de novo review, we affirm the termination of his parental rights.

## I.  *Background Facts and Proceedings.*

O.W. was born in August 2016. She has four maternal half-siblings.[1] In 2018, O.W.'s father adopted her oldest half-sibling T.W. In July 2020, T.W. reported that the father sexually abused her in August 2019 and again in July 2020. Initially, the mother was upset and stated the father would not be allowed in her home or around any of the children. Her tune changed quickly, and since the forensic interview, she has maintained that she does not believe T.W. Upon investigation, the Iowa Department of Health and Human Services found the father committed third-degree sexual abuse against T.W. The court adjudicated T.W. a child in need of assistance (CINA) in October.

In November, the court entered a dispositional order in T.W.'s case, which instructed the father to obtain a pyscho-sexual evaluation and follow through in all recommended treatment. That same day, the State filed CINA petitions for O.W. and her other half-siblings. In February 2021, the court adjudicated all of the children as CINA and removed O.W. from her father's care. In the adjudication order, the court noted that the father testified but invoked his right to remain silent

---

[1] This appeal pertains only to O.W. because her father has no biological or legal relationship with her half-siblings. Although he adopted T.W., his parental rights to T.W. were terminated in March 2022.

when questioned regarding sexually abusing T.W. The court reasoned removal was necessary due to the father's "untreated/unresolved sexual abuse" and the mother's inadequate protection. The father left the family home, and O.W. has not returned to his care. O.W. has remained with her mother, although a CINA action remained open with her at the time that her father's rights were terminated.

At the dispositional hearing in July, the father refused to obtain a psycho-sexual evaluation due to pending criminal charges. The court noted his participation in treatment was an essential component of the case plan. Supervised visits occurred at the mother's home until in-home workers expressed concerns that the parents were trying to intimidate them. Visits moved to the department's facilities. In December, the father pled guilty to the amended charge of child endangerment against T.W. In February 2022, the court sentenced the father to probation and deferred judgment. In March, the court terminated both the mother and father's parental rights to T.W.

The father completed a psycho-sexual evaluation in July and filed the results with the court in August. For reasons explained herein, the court found this report did not comply with the case plan. The father disagreed and did not complete another evaluation. In October, the court entered a permanency order directing the State to proceed with termination of parental rights. At the termination hearing in November, the parties declined to offer testimonial evidence. They submitted written closing arguments. In December, the court entered an order terminating the father's parental rights to O.W. He filed a timely appeal.

## II.   Review.

Our review of termination proceedings is de novo.  *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.   Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).   We give weight to the juvenile court's fact findings, especially those about witness credibility, although they are not binding.   *See* Iowa R. App. P. 6.904(3)(g); *C.B.*, 611 N.W.2d at 492.

## III.   Discussion.

The principal concern in termination proceedings is the child's best interests.  *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).  Iowa courts use a three-step analysis to review the termination of parental rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  Those steps include whether: (1) grounds for termination have been established, (2) termination is in the child's best interests, and (3) we should exercise any of the permissive exceptions to termination.  *Id.* at 472–73.

### A. Grounds for Termination.

The juvenile court found the State proved by clear and convincing evidence that termination of the father's parental rights was appropriate under Iowa Code section 232.116(1)(f) (2022).  The court may terminate under this paragraph if it finds all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The fourth element is at issue: whether the child could be returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

We agree with the juvenile court that O.W. could not be returned to her father's care at the time of the termination hearing. She was adjudicated a CINA based on the sexual abuse her father perpetrated against her half-sister. *See In re L.H.*, 904 N.W.2d 145, 150 (Iowa 2017) (noting "the common sense notion that, ordinarily, all siblings are at risk when one child has been sexually abused"); *see also In re D.D.*, 955 N.W.2d 186, 195 (Iowa 2021) (reversing the dismissal of a CINA action based upon a founded report of sexual abuse by the department without a criminal conviction). Since removal, the father has not engaged in sex-offender treatment as ordered by the juvenile court.

After repeated delays, he obtained a psycho-sexual evaluation in July 2022, but the results were such that the juvenile court did not accept it as compliance, and neither will we. The district court identified the following inaccuracies:

First, the report noted he claimed he avoided conflicts. Specifically, the father said "I tend to not raise my voice or yell, it's not my route." Throughout the [CINA] case, the Court has repeatedly been advised re. the father raising his voice and becoming escalated. Second, the report noted the father reported he followed the [department's] approved safety plan, he established with his therapist. That is not correct. The Court has been advised the father and the mother

violated their safety plan. See below. Third, the report noted the father claimed [T.W.] testified he "violently raped her for 3 days straight." The father's statement is misleading. [T.W.] testified at the adjudication trial re. the father repeatedly sexually assaulting her.

The evaluator's report also noted the father is "likely able to coax others into doing things they would not otherwise do" and that the father "may become socially obdurate, inappropriate, and potentially caustic and assaultive." Based upon the father's answers to the Multiphasic Sex Inventory II Profile (MSI-II), the evaluator characterized his "test taking behavior" as "deceptive, uncooperative response set," and the test results were deemed compromised.

The father argues that the court erred in requiring sex-offender treatment because it effectively required an admission of guilt in order to achieve reunification. However, our case law has long-approved of this approach. *See In re C.H.*, 652 N.W.2d 144, 149 (Iowa 2002) ("The court may not compel [a parent] to admit his guilt in order to be eligible to regain custody of his daughter. The court may, however, require [him] to comply with the case permanency plan which includes treatment."); *In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa Ct. App. 1988) (requiring "that the parents acknowledge and recognize the abuse before any meaningful change can occur"). Importantly,

> there is no evidence in the record, other than the assertions of [the father], that all treatment programs would require an admission of sexual abuse before recommending that [the father] be allowed contact with his children. The existence of such a universal requirement is not a matter appropriate for judicial notice.

*In re E.H. III*, 578 N.W.2d 243, 250 (Iowa 1998). Because an admission of guilt was not necessarily required, we cannot say the father's right against self-incrimination was infringed upon. Moreover, "a person's exercise of a

constitutional right may indeed have consequences." *C.H.*, 652 N.W.2d at 150. "One such consequence may be a person's failure to obtain treatment for his or her problems." *Id.*

In any event, the report from the psycho-sexual evaluation did recommend the father continue seeing his therapist and that sessions should focus on sexual education, risk management, appropriate sexual boundaries, and any issues around sexual curiosity. The father's therapy reports indicate that sessions focused on his "sadness and anxiety due to not being able to see his children" and "managing his emotions due to unfounded allegations of sexual abuse." We conclude this therapy did not comply with the treatment ordered by the court.

Despite his shortcomings with treatment, the father maintains (1) that he "was open to the possibility that abuse of the child had occurred and was working on processing the impact of abuse on his daughter and family safety planning," and (2) that he "has acknowledged and recognized the abuse and has done work necessary to eradicate the concern for further abuse." The record does not reflect that the father has acknowledged and recognized the abuse. In addition to the disingenuous pyscho-sexual evaluation, the father was uncooperative with safety planning. The father agreed to a safety plan under which he was not to initiate physical contact with the children, but he violated the plan by hugging a step-daughter from behind. He also made her uncomfortable by calling her "babe" or "baby" in text messages and putting hearts next to his name in her phone.

The guardian ad litem supported termination due to "the Psychosexual Evaluation's disappointing results as well as [the father's] continued inability to recognize any wrongdoing and his continued inability to comply with the safety

plan." The juvenile court made adverse credibility findings, including that "the father has manipulated [T.W.] and the mother." Ultimately, the father's failure to engage in treatment renders O.W. at risk of imminent sexual abuse and further adjudication as a CINA. *See In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002) ("Although every CINA adjudication addresses a unique situation, facts in prior cases suggest that perpetrators of sexual abuse often abuse multiple children in the family without regard to the sex of the child."); *D.D.*, 955 N.W.2d at 194–95 ("While we agree that creating a family utopia certainly can't be [the department's] pursuit, nor can permitting child sexual abusers to live with their victims when the sexual abuser has never admitted to the act and thus cannot have been 'treated' to fix it . . . ."). Because the father has not made meaningful progress in acknowledging and recognizing the abuse, we find O.W. could not be returned to his care at the time of the termination hearing.

*B. Best Interests.*

To evaluate the child's best interests, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" of the best-interests analysis are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). We note the child's attorney in this case filed a closing argument requesting the court not terminate the father's rights primarily due to financial concerns. The father advanced a financial argument against termination involving the loss of child support for the mother and reduced standard of living for O.W. During the CINA

proceedings, the court expressed concern that the father manipulated the mother through the recent purchase of a home that he argued she would stand to lose without his financial support. However, arguments surrounding the loss of child support are not appropriate for our consideration as we focus on the best interests of the child. *See id.* at 749 ("[T]he anticipated loss of child support funds in and of themselves as a result of termination should not be part of the section 232.116(2) best interests analysis.").

More importantly, the father has not meaningfully engaged in the treatment ordered by the juvenile court. Based on this lack of treatment, signs of manipulation, safety plan violations, and the father's history with O.W.'s half-sister, we find O.W.'s long-term safety and well-being will be best served by termination. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing."). Clear and convincing evidence shows that termination is in the child's best interests.

*C. Exceptions to Termination.*

The father asserts that the juvenile court should have applied two exceptions to prevent termination. We note that the exceptions under section 232.116(3) are "permissive, not mandatory," and the parent bears the burden to prove the applicability of an exception to termination. *A.S.*, 906 N.W.2d at 475–76. First, the father argues an exception should be granted because of the parent-child bond that he and O.W. share. *See* Iowa Code § 232.116(3)(c) (providing an exception to termination when "[t]here is clear and convincing

evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). Despite the father's love for his child, "our consideration must center on whether the child will be disadvantaged by termination." *D.W.*, 791 N.W.2d at 709. We do not find a parent-child relationship so strong that it outweighs the need for termination. *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) (finding the existence of a bond is insufficient when parents have "failed to provide the clear and convincing evidence necessary to show that, on balance, that bond makes termination more detrimental than not").

Finally, the father argues against termination of his rights to O.W. because she is in the custody of her mother. *See* Iowa Code § 232.116(3)(a) (stating the court "need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child"). We decline to preserve the father's parental rights based on the child's familial placement. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *A.S.*, 906 N.W.2d at 475 (citation omitted). We instead look to the child's best interests. *See id.* Having done so, we conclude O.W.'s best interests are served by termination.

## IV. *Disposition.*

After reviewing the father's arguments regarding the statutory ground for termination, child's best interests, and permissive exceptions, we find each without merit and affirm termination of his parental rights.

**AFFIRMED.**