# IN THE COURT OF APPEALS OF IOWA

No. 23-1253
Filed November 21, 2023

**IN THE INTEREST OF M.A. and S.A.,**
**Minor Children,**

**M.A., Mother,**
            Appellant.
_____

        Appeal from the Iowa District Court for Crawford County, Kristal L. Phillips,

District Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Kelsea M. Hawley of Minnich, Comito & Neu, P.C., Carroll, for appellant

mother.

        Brenna Bird, Attorney General, and William E. Sales III, Assistant Attorney

General, for appellee State.

        Dean A. Fankhauser of Tigges, Bottaro & Lessmann, LLP, Sioux City,

attorney and guardian ad litem for minor children.


        Considered by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

A mother appeals the termination of her parental rights to two children, M. and S.  We find reasonable efforts were made to reunify given the mother's level of participation with services, a statutory ground for termination was established, termination is in the children's best interests, and the court correctly declined to apply any exceptions to termination.  We affirm.

## I.      Background Facts and Proceedings

In spring 2021, the mother had five minor children in her care born between 2005 and 2016.  The mother came to Iowa from Guatemala in late 2006, and the youngest four children were all born in Iowa.  The family lived with the mother's boyfriend.  In March and April, the mother was the subject of nine reports to the Iowa Department of Health and Human Services (HHS).  The reports alleged sexual abuse related to four different children, domestic abuse, failure to provide supervision, child sex trafficking, child prostitution, and physical abuse.  HHS determined two reports for sexual abuse and one report for failure to supervise were founded.

One of those reports alleged the mother planned to send fifteen-year-old L. to live with a man she did not know in another city.  The report also noted that the mother had previously taken money from a man in exchange for her oldest daughter, C. (who was eighteen at the time of the report and not subject to juvenile court jurisdiction).  After HHS removed L. from the home, the mother accused L. of lying to HHS and law enforcement during phone calls.

Another report was founded two weeks later. HHS removed thirteen-year-old V. after the child was found non-responsive from a head injury. The mother gave an inconsistent explanation for the injury's cause.

HHS removed the remaining three minor children—eleven-year-old F., nine-year-old S., and four-year-old M.—two days later. In September, the juvenile court adjudicated all five children as children in need of assistance (CINA). The court ordered the mother to "complete a mental health evaluation and follow all recommendations," "enroll in and participate in a parenting class to learn appropriate parenting skills," and notify HHS of any change in living arrangements.

The mother's primary language is a language native to the Guatemalan highlands. She speaks and understands Spanish but does not know English. Early on, HHS observed that the mother "often states that she doesn't understand the Spanish interpreters; however, she communicates with . . . the Spanish interpreter used for all her visits without issue." HHS also observed that the mother declined to have her adult child go with her to a mental-health evaluation to help translate. During these proceedings, the mother had limited schooling and reported she could not read or write. She also communicated that some of her difficulties answering questions were because she could not remember the entire question, not because she wasn't speaking in her primary language. The mother relayed that she did not understand why the children were removed, despite repeated explanations from HHS, the interpreter, and the family services worker. HHS reported the mother "often changes the topic, becomes emotional[,] or says she's done nothing wrong" when addressing the sexual abuse and behaviors of the children.

The mother completed a parenting class, obtained a mental-health evaluation, and started therapy. But her therapy stopped for a time because of financial challenges, and her therapist told HHS the mother "doesn't want to speak about the things we've discussed or reasons the case came to court." Overall, she denied most of the abuse reported by the children, only admitting three specific instances of sexual abuse: one that resulted in pregnancy, one she reported to law enforcement, and another after it was reported to a medical professional. The mother attended all of her supervised visits with the children, but the case worker described the visits as "very surface" with no questions about the children's lives, friends, school, or how they were doing. In early 2023, the mother obtained her own housing. And she began selling tamales and clothing from Guatemala and cleaning houses for income. One of her older children also provided her with financial support.

The children's guardian ad litem (GAL) recommended termination. The GAL observed, "Even if the facts were presented and assumed in the most favorable light to the mother, . . . she just does not have the ability to parent or protect her children." The GAL noted the mother could not protect herself or provide for her own basic needs. The GAL further opined "the trauma of the removal and termination of parental rights are greatly outweighed by the danger they would be placed in if returned to their mother's care."

The juvenile court terminated the mother's rights to M. and S. under Iowa Code section 232.116(1)(d) and (f) (2023). The mother appeals that ruling. The mother's rights to the other children, as well as the putative fathers' rights to M. and S., are not at issue in this appeal.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re D.W.,* 791 N.W.2d 703, 706 (Iowa 2010). "[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *Id.* at 707. "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* at 706.

## III.     Discussion

The mother asserts the State failed to provide reasonable efforts toward reunification with the children. She also claims that grounds for termination were not proven by clear and convincing evidence. And she urges termination of her parental rights is not in the best interests of the children. Finally, the mother argues the court should have applied an exception to termination.

### A.  Reasonable Efforts

As a threshold note, we recognize many services the mother complains about not receiving in her petition on appeal are not services she requested a reasonable time before the termination trial. For example, she filed a motion three weeks after the termination trial started seeking additional therapy and other services. Other requests were made, as the GAL pointed out below, on "the eve of termination." We limit our reasonable-efforts review to those services the mother sought a reasonable time before trial. *See In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000) ("We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made.").

The only reasonable-efforts challenges preserved below and asserted on appeal relate to her therapy and visitation.

First, the mother challenges reasonable efforts based on a pause in her therapy caused by a delay in HHS providing requested financial assistance. The juvenile court below recognized this issue but noted the mother missed two appointments even after restarting therapy. In our review, we find attendance was not the mother's biggest problem with therapy. Her biggest obstacle to success was that she failed to address her own role in facilitating or permitting the abuse of her children. Therapy without such recognition is not meaningful and will not enable the mother to meet the children's needs in the future. *See In re H.R.K.*, 433 N.W.2d 46, 60 (Iowa Ct. App. 1988) ("[T]he requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs."). Because the therapist noted the mother's ongoing denials of abuse and refusal to talk about the children's trauma, we find additional efforts in this arena by HHS were unlikely to further reunification.

Second, as to visitation, "the nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). We have explained, "if services aimed to remove the risk responsible for limited visitation have not met their objective, then increased visitation would not be in the children's best interests." *In re J.C.* No. 23-0729, 2023 WL 5605337, at *2 (Iowa Ct. App. Aug. 30, 2023). The HHS worker testified the mother's visits did not progress due to continuing concerns about the mother's failure to take accountability for her role in permitting abuse, her blaming others (including the children), and her inability to enforce simple rules such as not

permitting other persons to join her visits. This testimony persuades us that HHS's reluctance to decrease supervision or increase visitation was reasonable. We decline to reverse the juvenile court's finding that reasonable efforts were provided.

**B. Statutory Grounds**

The court terminated the mother's parental rights under Iowa Code section 232.116(1)(d) and (f). The mother challenges both grounds on appeal, but we need only find clear and convincing evidence of one to affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We find termination was proper under section 232.116(1)(f). To terminate a parent's rights under this section, the court must find, by clear and convincing evidence, the child (1) is at least four years old; (2) has been adjudicated a CINA; (3) has been removed from the parent's physical custody for at least twelve of the last eighteen months or the last twelve months with no trial period at home thirty days or longer; and (4) cannot be returned to the parent's custody at that time. Iowa Code § 232.116(1)(f). The mother only challenges the final element, arguing she did what HHS asked of her, ended a problematic relationship, had suitable housing, and was employed to the best of her ability.

On our de novo review, we agree with the juvenile court that the mother was still unable to offer a safe home for the children. According to HHS testimony, the mother was "unwilling to speak about any past abuse that has occurred or potentially occurred—She's unwilling to talk about trauma that the kids have . . . due to abuse in the past." The mother's denial made it "impossible" to educate her on how to keep the children safe, have appropriate conversations, and move forward. The mother lacked a clear, realistic plan on how to protect her children

both physically and emotionally if they returned to her care. At the end of the termination trial, the children's GAL expressed concerns relating to the mother's ability to understand the impact of trauma on the children and her protective capacity. This evidence convinces us, like the juvenile court, that the children "would be highly at risk of being sold for money and/or sexually assaulted if placed back with [the mother]."

We recognize the mother made some progress in housing, relationships, and employment. But this progress was recent to the termination trial and relied heavily on financial support from family members. In any event, the mother has not progressed beyond supervised visitation after her boyfriend joined the first semi-supervised visit without permission. The lack of progress on visitation supports that the children could not be returned to her care. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care."). Considering the record here—including significant abuse allegations from multiple children with multiple alleged perpetrators, including family members—the mother's progress does not outweigh her inability or unwillingness to understand behaviors indicating sexual abuse, to address that abuse, and to recognize the ongoing and long-lasting harm posed to the children. In short, the mother's failure to acknowledge the reality of sexual abuse means M. and S. could not be safely returned to the mother's care.

### C. Best Interests

The mother argues termination is not in the children's best interests because of the parent-child bond, their love, and the bond M. and S. have with their siblings (which the mother claims is only intact because the children see their siblings at the mother's visits). To the extent the mother's argument about her bond with the children touches on both best interests and the applicability of an exception, we address the argument here and again below.

When determining best interests, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). We also consider the children's integration into the foster family and whether the foster family is willing to permanently integrate the children into the family. *Id.* Contrary to the mother's argument on appeal, we are convinced the evidence proved termination serves the children's best interests.

M. and S. have both identified they would turn to their foster parents or the HHS worker if they had a problem or something bad were to happen—not to their mother. The court appointed special advocate assigned to the children observed they were "very attached" to the foster parents, and the foster parents reported they want to adopt M. and S. The foster family has a safe, stable home, and the foster parents have worked in therapy and the home to be a good placement for the children. Given the history of abuse within and outside their birth family, as well as the safe home willing to permanently integrate them, termination is in the children's best interests.

As for the sibling-relationship issue, we recognize M. and S. only see one of their siblings, V., during visits with the mother. The other two removed siblings have not participated in family visits for more than a year. The foster family has worked to maintain the sibling relationships, having V. over to visit at times and meeting up with L.'s foster family one weekend. The sibling relationship is no longer dependent on the mother. And while maintaining the sibling connection is important, here the connection is not affected by and does not preclude termination of the mother's rights.

## D. Permissive Exceptions

The mother argues the court should have applied two exceptions to avoid termination. First because S.A. is over ten years of age and objected to the termination. *See* Iowa Code § 232.116(3)(b). And second, because the parent-child bond is such that termination would be detrimental to the children. *See id.* § 232.116(3)(c). These exceptions to termination are permissive, not mandatory, and "[t]he court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the children." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).

### 1. The Child's Preference

In considering the potential exception based on S.'s objection, the juvenile court emphasized that S. told the GAL she "kind of" wanted to return to the mother. But the GAL observed, "any stated desire to not have her mother's parental rights terminated appears to [be] born of obligation rather than actuality." Both children reported feeling safer with the foster parents than the mother. And S. gave a

careful answer of not feeling unsafe with the mother, while "she did feel unsafe with those whom [the] mother allows around" the children. An HHS worker also testified that interactions between the mother and M. and S. were shallow, rather than indicative of a deep bond.

As in the child-custody context, we consider an array of factors in determining assessing a child's preference regarding termination,

> including (1) their age and education level; (2) the strength of their preference; (3) their intellectual and emotional make-up; (4) their relationship with family members; (5) the reason for their decision; (6) the advisability of honoring the children's desire; and (7) the court's recognition it is not aware of all the factors influencing the children's view.

*A.R.*, 932 N.W.2d at 592. S. was eleven years old and in fourth grade when she expressed some preference to return to the mother's care. She has a tight bond with M., which led to M. switching placements soon after removal to keep the children together. Given the past trauma S. endured while in the mother's care, her attachment to the foster family and her sibling, and the ambivalence of her expressed preference, we agree with the juvenile court that honoring S.'s request would not be in the child's best interests and does not preclude termination.

### 2. Parent–Child Bond

Another permissive exception allows the juvenile court to decline termination if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). A parent resisting termination has the burden to prove this permissive exception by clear and convincing evidence, and our case law recognizes that—without more—neither a parent's love nor the mere existence of a bond is enough to prevent termination.

*See id.*; *In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *D.W.*, 791 N.W.2d at 709. The children have been out of the mother's care for more than two years, with a single supervised visit each week. While the mother loves her children and they love her, we agree with the juvenile court that the mother did not carry her burden to prove by clear and convincing evidence that any detriment caused by severing the bond outweighs the benefits of termination and permanency. *See In re K.M.*, 653 N.W.2d 602, 606 (Iowa 2002) ("Any detriment [the child] will suffer as a result of the severance of the parental bonds is more than outweighed by the benefits that will accrue from her placement in a safe, stable, and supportive environment.").

## IV. Disposition

We affirm the termination of the mother's parental rights to M. and S under Iowa Code section 232.116(1)(f).

**AFFIRMED.**