In the Interest of H.R.K., R.M.A.C., AND R.L.C., Jr., Children, R.C. and R.C., Parents, Appellants.

No. 87–1555.

Court of Appeals of Iowa.

Sept. 28, 1988.

Thomas H. Preacher, Davenport, for appellant parents.

Thomas J. Miller, Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellee State.

David Millage, Bettendorf, guardian ad litem for the children.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

The parents of three children appeal from the district court order terminating their parental rights. They contend the juvenile court denied them due process by relying on evidence of sexual abuse, a subject not addressed in earlier CHINA hearings or CHINA adjudications, and by relying on their failure to complete a sexual abuse treatment program which required them to admit sexual abuse. They also challenge a number of evidentiary and procedural rulings. Finally, they challenge the sufficiency of the evidence to establish that the children cannot safely be returned to their custody.

Our review of proceedings to terminate a parent-child relationship is de novo. Iowa R.App.P. 4. We accord weight to the fact findings of the trial court, especially when considering the credibility of the witnesses the court has heard and observed first

hand, but we are not bound by them. Upon our de novo consideration of the record before us, we affirm the termination order.

H.R.K., R.M.C. and R.L.C. were born in 1977, 1980, and 1981, respectively. All three children have the same mother, R.C. R.M.C. and R.L.C. also have the same father, B.C., who is presently R.C.'s husband and H.R.K.'s stepfather. The family has been involved with social services since 1983, when all three children were first adjudicated to be children in need of assistance. The children were also adjudicated CHINA in 1984 and 1985. The grounds for the CHINA adjudications included physical abuse, neglect, marital violence between the parents, frequent moves by the parents and other indications of instability, and the lack of a consistent, nurturing, and caring home environment.

Termination petitions for all three children were filed in March 1987. An order terminating parental rights was filed in September 1987. The parents appeal the termination order on a number of grounds.

Iowa Code section 232.116(5) (1987) permits the juvenile court to terminate the parent-child relationship if the child has been adjudicated in need of assistance, has been placed out of the parent's custody for more than twelve of the last eighteen months, and there is clear and convincing evidence that the child will suffer harm specified in Iowa Code section 232.2(6) (1987) if returned to the parent. *See In re K.L.C.*, 372 N.W.2d 223, 227 (Iowa 1985). The types of harm specified in section 232.-2(6) include the physical abuse or neglect of the child and the harm caused by the parents' failure to exercise reasonable care in supervising the child. Proof of any one of the types of harm delineated in section 232.2(6) is sufficient to support termination. *See In re K.L.C.*, 372 N.W.2d at 228.

I. R.C. and B.C. first contend the juvenile court erred in judicially noticing certain documents from the earlier CHINA proceedings. R.C. and B.C. argue there was no showing that these documents were actually admitted into evidence in the CHINA proceedings and suggest that the documents may have been prepared for the CHINA proceedings but never actually admitted into evidence.

■ R.C. and B.C. rely upon our supreme court's decision in *In Interest of Adkins*, 298 N.W.2d 273 (Iowa 1980), for the proposition that an item judicially noticed can have no greater evidentiary weight in the proceeding in which it is noticed than in the proceeding of which it was originally a part. While a novel argument, we do not read *Adkins* so narrowly. In *Adkins*, the natural father contended that the juvenile court should not have taken judicial notice of the prior CHINA action in the termination proceeding because it was "a separate and distinct proceeding." The supreme court held "it is permissible for a trial court ... [in a] termination proceeding to judicially notice the prior CHINA case, *including* the evidence...." *Adkins*, 298 N.W.2d at 277–78 (emphasis added). Although not directly on point, we agree with the State that judicial notice in these proceedings is not limited to evidence, but includes any part of the CHINA record. Such a reading of *Adkins* is consistent with the court's rationale in support of its holding, to the effect:

> CHINA and termination proceedings are not separate and distinct actions, but are interdependent and interwoven. The CHINA action may be a prelude or first step to termination of the parent-child relationship. Many of our decisions disclose that a termination action often follows directly from a prior CHINA adjudication.

*Id.* at 277 (citations omitted). Our reading of *Adkins* is also consistent with *Harter v. State*, 260 Iowa 605, 149 N.W.2d 827 (1967), in which the court held that evidence, which under ordinary rules of evidence applicable to a civil trial would be excluded as hearsay, lacking a proper foundation, improper opinion evidence, or not the best evidence, is admissible in [termination] proceedings and the nature of the evidence is to be considered as it affects its probative value rather than its admissibili-

ty. *Harter*, 260 Iowa at 608, 149 N.W.2d at 829.

In light of *Adkins* and *Harter*, we find appellants' argument to be without merit.

II. The parents also contend that the juvenile court erred by refusing to allow their attorney to interview the children, refusing their request for an independent medical examination of the children, and refusing to allow them to subpoena H.R.K. to testify at the termination hearing. In support of these requests, the parents argue that they have not had a fair opportunity to deal with their children's allegations of sexual abuse.

■ The trial court denied the parents' requests primarily on the grounds that to grant the requests would subject the children to undue trauma. Upon our review of the record, we agree.

Testimony at the hearings indicated that a physical examination of the children would be traumatic, particularly with respect to H.R.K. and R.C. because of the intimate nature of such an exam. The testimony also indicated that the likelihood of finding evidence of sexual abuse nearly a year and a half after the alleged incident was minimal.

Further testimony was offered that interviewing the children would be traumatic as well as harmful to the treatment process, particularly in view of the fact that the children have previously been asked to discuss the sexual abuse allegations a number of times:

Q. Do you have an opinion as to whether or not the children should be interviewed by the attorney for the mother at this time?

A. Yes, I do.

Q. And what is your opinion?

A. That at this time they should not be interviewed.

Q. And what is the basis for your opinion?

A. They have already disclosed this information directly to the parents. They have disclosed the information directly to their attorney. They also become extremely stimulated by the—having to discuss it.

I'm concerned that by discussing it again that some of the behaviors may carry over when they return to their foster homes. Also, I think that the children become confused by what that—what it means in terms of talking to their attorney, whether or not that means Mom and Dad have come to the point where they're dealing with that, or whether or not Mom and Dad are wanting them to change their stories. And, also, I think they end up starting all over again in terms of the therapy process. They've moved beyond discussing the allegations. They need to go on to, you know, what's appropriate behavior and what's not.

We agree with the trial court that it is not in the children's best interests given their ages and emotional status to continually confront them about matters of sexual abuse. We find no error in the trial court's denials of appellants' motions.

III. Parents also contend that the trial court denied them due process because 1) none of the petitions for termination specified sexual abuse as a ground for termination and 2) the termination was based in part on the parents' failure to complete a sexual abuse treatment program. We disagree.

■ With respect to parents' first due process claim, the record reveals that they had more than adequate notice regarding the factual basis for the termination. At the May 1987 hearing on the parents' motion for a more specific statement, it was clearly set out that sexual abuse was one of the grounds upon which termination was to be sought. Moreover, there is evidence in the record that the allegations of sexual abuse are not recent, and in fact, casework papers dating back as far as 1985 indicate that sexual abuse allegations have been of concern to the State for some time.

In view of the lengthy case history and the many court proceedings which preceded the termination petitions in this case, we are convinced that the parents were sufficiently apprised of the factual basis upon which termination was being sought.

■ The parents' second due process argument, while novel, is also without merit. The parents argue that the State's requirement that they complete a sexual abuse treatment program in which they must first admit that the sexual abuse occurred had the effect of conditioning one constitutionally-protected right (the right to maintain the integrity of the family unit) upon the forfeiture of another constitutionally-protected right (the right against self-incrimination). They argue that because the treatment program presented them with this dilemma, their failure to complete the treatment program was not a permissible factor to consider in the termination decision.

We agree with the State that the best interests of a child in any termination proceeding are of utmost importance, *see Interest of McDonald*, 201 N.W.2d 447, 453 (Iowa 1972), and the requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs. While not authoritative, we agree with the Minnesota appellate court's reasoning in *Matter of Welfare of S.A.V.*, 392 N.W.2d 260 (Minn.App.1986), in which the court stated:

> Termination of appellant's parental rights is a very real possibility if he does not cooperate with counseling because the state will be unable to work with him toward resumption of his parental responsibilities. The trial court's finding that the parents need to recognize the cause of the children's injuries before any meaningful change can occur recognizes that a parent who acknowledges the need for professional help is more amenable to treatment than one who denies the need for help. *See e.g.*, S. O'Brien, *Child Abuse* 124 (1980). Termination in such a situation is not, however, a sanction for exercise of a constitutional right, but simply the necessary result of failure to rectify parental deficiencies. Although the state cannot require appellant to waive his constitutional right, that does not mean it must relinquish its right and obligation to protect these children.

392 N.W.2d at 264.

We find appellant's due process claims to be without merit.

IV. Finally, parents claim that the evidence is insufficient as a matter of law to justify termination of their parental rights. The parents contend that since the evidence of sexual abuse is not properly before the court, the evidence fails to meet the clear and convincing statutory standard, and there is no reason the children cannot be returned home at this time.

■ We strongly disagree. Sexual abuse allegations aside, the record contains ample evidence in support of the court's termination order there is clear and convincing evidence that the children were physically abused and neglected. Prior to the children's removal in January 1985, there were seven substantiated child abuse reports within the family involving general neglect, denial of critical care, failure of the parents to follow through with medical needs, environmental problems, and physical abuse. The children suffer from numerous emotional and physical problems. Moreover, the parents are unable to provide a stable home environment for the children as the family has moved several different times within the past two years.

Our recitation of other evidence in support of the court's order is unnecessary. We are convinced that termination of the parents' rights in this case is warranted under Iowa law.

AFFIRMED.