**IN THE COURT OF APPEALS OF IOWA**

No. 23-0352
Filed April 26, 2023

**IN THE INTEREST OF J.R. and L.R.,**
**Minor Children,**

**J.R., Father,**
        Appellant.
_____


        Appeal from the Iowa District Court for Marion County, Erica Crisp, District

Associate Judge.


        A father appeals the termination of his parental rights.  **AFFIRMED.**


        Tara M. Elcock of Elcock Law Firm P.L.C., Van Meter, for appellant father.

        Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Dusty Clements of Clements Law & Mediation, Newton, attorney and

guardian ad litem for minor children.


        Considered by Badding, P.J., Chicchelly, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**SCOTT, Senior Judge.**

Jacob challenges the termination of his parental rights with respect to J.R., born in 2013, and L.R., born in 2018.[1]  Jacob has been found to be the perpetrator in a number of child-abuse assessments,[2] been involved in prior juvenile court proceedings, and his relationships with both children's mothers involved domestic violence.

These juvenile court proceedings were initiated in May 2021 after J.R. reported Jacob assaulted Brandy while she was driving with the children in the car and almost caused them all to go into a ditch.[3]  The ensuing child-abuse assessment was founded for denial of critical care.  There were also reports Brandy and Jacob were using methamphetamine.  Brandy submitted to chemical testing, which were negative for illegal substances.  Jacob refused to submit to testing and denied current use.  The children were removed from the father's custody by ex parte order on May 25, 2021.

Jacob had a sweat patch test in August 2021 that tested positive for methamphetamine.  But Jacob insisted he had not used methamphetamine since May 2019.  The children's removal was confirmed and the children were

---

[1] J.R.'s mother is Kelsey.  L.R.'s mother is Brandy.  Only the father's parental rights are at issue.

[2] Seven founded child-abuse assessments name Jacob as the perpetrator with dates of December 9 and 11, 2011 (failure to provide proper supervision); April 10 (failure to provide proper supervision) and May 16, 2018 (third-degree sexual abuse); March 30, 2019 (dangerous substances, failure to provide proper supervision); and two on May 13, 2021 (failure to provide proper supervision).

[3] Other children were also in the car who are not involved in these proceedings.  Those children also reported Jacob was hitting Brandy while she drove, pushed one of the children to get to a phone in Brandy's hand.  They also reported he was using marijuana and methamphetamine at the home.

adjudicated children in need of assistance (CINA) after a September hearing and November 2 ruling; the juvenile court found Jacob had "unresolved domestic violence and substance abuse issues that have and continue to place his children in danger."

In December, the department provided Jacob the contact information for J.R.'s therapist so Jacob could set up family therapy. The department was informed later by J.R.'s therapist he would not provide services to Jacob "based upon [Jacob's] disrespectful, condescending, belligerent attitude and behaviors."

A dispositional hearing was held on January 5, 2022, and the children were placed in their respective mothers' care. Since at least the children's disposition, Jacob has been expected to obtain substance-abuse and psychological evaluations and follow any recommendations, including anger management; participate in random drug testing by the department of health and human services (department); participate in family therapy with J.R.[4]; participate in the department's safe-parenting programming, and participate in supervised visits at the department's discretion.

In January 2022, Jacob reported to the department he had completed a mental-health evaluation and no treatment was recommended. Similarly, Jacob reported having had a substance-abuse evaluation with no treatment recommended. But neither evaluation report was shared with the department.

A dispositional review hearing was held on August 24. Jacob was ordered

---

[4] Jacob was not having supervised visits with J.R. because J.R. expressed fear and unease in Jacob's presence and J.R.'s therapist recommended father and child participate in counseling together first.

to submit to a drug test after the August hearing—he did not.[5]  In its dispositional review order, the court specifically found Jacob

> has significant anger management and substance abuse issues that he refuses to address or even acknowledge; he completed a substance abuse evaluation but no treatment was recommended because the father did not take any documentation of the events in this case, so the evaluation was based entirely off self-report; the evaluation was not provided to [the department] until the middle of this hearing, so [the department] could not follow through with the provider; no mental health evaluation or anger management has been completed by the father, who reports having attended counseling but has provided no documentation; visits have been reduced from twice weekly with [L.R.] to once weekly due to scheduling issues, which has frustrated the father; the paternal grandmother supervising the visits testified in a manner that concerns the court that she does not understand the scope and nature of being a visit supervisor; in addition, she appears to blame [L.R.]'s mother equally for this case, which leads the court to believe she does not fully appreciate the underlying incident, as she equated not buckling a seatbelt (which the court does not condone) to jerking the wheel away from the driver and turning a vehicle in motion off, causing it to crash into a ditch; the father has worked sporadically since the disposition hearing, but has not financially supported either child . . . .

The court noted J.R.'s mother had sole legal custody of and control over visitation due to the father's default in a modification proceeding, "however the father insists he will be asking to set aside or re-modify that case."  The court also noted L.R.'s mother and the father have custody proceedings pending.

The court ordered the department to provide Jacob with the additional visitation that was ceased due to scheduling issues.  The court denied Jacob's requests that the case be closed and custody issues be dealt with in family court,

---

[5] Jacob resisted and rejected testing by the department, pointing to results from non-random drug tests taken voluntarily or when reporting to his probation officer.

finding "this court deems that the juvenile court's involvement is still necessary at this time."

Jacob was ordered to obtain new substance-abuse and mental-health evaluations and "shall provide copies of the assessment and/or other documents the department deems necessary for the provider to determine the appropriate level of treatment" and "to comply with random drug testing." The court reasoned "issues have been in existence since the beginning of the case and have yet to be appropriately addressed." A permanency hearing was scheduled for October 26.

Jacob appealed the dispositional review ruling.[6] A panel of this court affirmed, noting Jacob's "unaddressed issues with domestic violence, anger management, and substance abuse render him an ongoing danger to both the children and their mothers." *L.R.*, 2022 WL 17826919, at *1.

In the meantime, a petition to terminate Jacob's parental rights was filed on October 17. The prehearing report outlined the department's seventeen-month involvement and Jacob's on-going lack of accountability and denial of current substance use or anger-management issues. The report included examples of Jacob's manipulative and intimidating behaviors with female service providers. The report observes:

> Compelling reason to terminate is the lack of progress that Jacob has shown during his involvement with [the department] and the court. Jacob has recently had a negative drug test with the department. Prior to that Jacob continued to refuse testing or state that his positive test was faulty and refuse to test again unless it was at his choice. Jacob has not engaged in family therapy. Jacob has not demonstrated anger management. [J.R.] and [L.R.] are in need

---

[6] The juvenile court's dispositional review order found reasonable efforts had been provided. The father raised no challenge to reasonable efforts in his appeal. *See In re L.R.*, No. 22-1482, 2022 WL 17826919, at *1 (Iowa Ct. App. Dec. 21, 2022).

permanency which they can achieve with termination and placement with their mothers.

Because Jacob received new counsel in November, the termination-of-parental-rights trial was rescheduled.

The permanency hearing and termination trial was held on December 27 and 28, 2022, and January 24, 2023. Jacob testified he had obtained full-time work, housing, and transportation. He denied smoking methamphetamine after 2019, but acknowledged he had put it in his coffee. He testified he provided negative drug tests to his probation officer, and testified he was now attending counseling sessions and had participated in "Talking about Change,"[7] which he felt fulfilled his substance-abuse programming. Jacob asserted that because he was doing everything the department expected of him, the children could be returned to him at present—or the court should grant him additional time.

The juvenile court declined to grant the father additional time and found termination of Jacob's parental rights was proper pursuant to Iowa Code section 232.116(1)(e) and (f) (2022). The court also found termination of Jacob's parental rights was in the children's best interests and declined to apply any permissive exception. The father appeals.

We review termination of parental rights proceedings de novo. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.*

---

[7] Testimony at trial about this program suggest it is an informational series about various substance-use topics and general goal-setting.

We have reviewed the extensive record. We find clear and convincing evidence to support termination under section 232.116(1)(f).[8] Jacob denies having an issue with domestic violence testifying, "I have not been around any women this year or last year to be domestically violent." He lacks insight concerning his anger-management issues or how it has contributed to the children's removal from the home. We adopt this analysis of the juvenile court:

> Jacob continues to treat females in this case with such hostility that the Department and [Family Centered Services] changed the caseworkers to male workers in order to attempt to help Jacob progress further. But that is not a possibility when it comes to the children's mothers—they should not and cannot be removed from their children's lives in order to accommodate Jacob's anger. He continues to show anger towards females and general impulse control issues, such as in his Facebook posts. Jacob has a significant criminal history of both assault and domestic assault. Jacob's current actions, his temperament, and his failure to acknowledge the danger his issues with violence pose to his children compel the court to conclude that both children cannot safely be returned to his care at this time without a prior meaningful engagement in reducing future violence.

*See In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021) (finding meaningful change cannot occur without acknowledging an issue exists); *In re H.R.K.*, 433 N.W.2d 46,

---

[8] We only need to find termination appropriate under one of the sections used by the juvenile court to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

Under paragraph (f), the court may terminate a parent's rights if all of the following are found:

(1) The child is four years of age or older;
(2) The child has been adjudicated a [CINA] pursuant to section 232.96;
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days;
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). Only the last element is disputed.

50 (Iowa Ct. App. 1988) (noting "requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs"); *see also In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (noting father failed to acknowledge his drug use despite strong evidence to the contrary).

Jacob objects to his limited visits with the children.[9] He asserts the State failed to make reasonable efforts such as "appropriate drug screening," reunification therapy, and "all means necessary" to enable visitation. He is particularly critical of his lack of contact with J.R., whom he has not seen in over a year. Jacob contends his lack of visitation is the result of the department allowing the child to decide not to participate. The State contends Jacob did not contest reasonable reunification efforts in his appeal of the August dispositional-review order and he cannot do so now. The State notes Jacob concedes the permanency goal was no longer reunification. We agree his challenge to visitation is not properly before us.

In any event, these assertions misstate the reasonable-efforts standard. Iowa Code § 232.102(6) (providing that if custody is transferred to DHS, it "shall make every *reasonable* effort to return the child to the child's home as quickly as

---

[9] Jacob also raises a due process challenge on appeal. However, this issue was neither raised nor ruled upon by the juvenile court and we do not address it here. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *cf. In re R.D.*, No. 22-1966, 2023-WL2672051, at *5–6 (Iowa Ct. App. Mar. 29, 2023) (discussing reasonable efforts and finding "in cases where it is not appropriate or possible to return a child to a parent, the focus of the department's efforts is on permanency for the child rather than services meant to aid in reunification of the family").

possible *consistent with the best interests of the child*" (emphases added)). The State is not required to pursue "all means necessary." Rather, reasonable efforts include "visitation designed to facilitate reunification *while providing adequate protection for the child*." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (emphasis added).

Jacob's contentions also ignore the part his conduct has played. With respect to J.R., the State notes J.R. is afraid of his father and had not seen him in person for more than a year due to Jacob's refusal to engage in any contact not on his own terms. Jacob's attitude and behavior led J.R.'s therapist to refuse to participate in reunification therapy, and Jacob did not follow through with information about alternative therapy providers. Jacob was offered phone contact with J.R. but did not choose to call. Jacob's visits with L.R. were curtailed first by Jacob's work schedule and later by Jacob's refusal to allow service providers on his property—and his refusal of Brandy's offer to have the visits at her home supervised by Jacob's parents and Brandy leaving during the visit. We reject his reasonable-efforts challenge.

"Children simply cannot wait for responsible parenting." *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (citation omitted). It was only after about a year-and-a-half of involvement with juvenile court that Jacob minimally addressed the substance-abuse and domestic-violence issues that brought him and his children to the department's attention. Again, we adopt the trial court's reasoning:

> With regard to substance abuse, perhaps another six months would allow the court to determine whether Jacob's changes are likely to become permanent. However, given that he has made virtually no progress on his assaultive behaviors in the last eighteen-plus months, coupled with the fact that his position regarding the domestic

violence incidents continues to be denial, a six-month extension would not likely significantly reduce Jacob's propensity towards domestic violence. The court sees no reason to believe that Jacob would engage in any anger management or domestic violence-related services, given that he has repeatedly been informed that he needs to do that and he has thus far ignored those orders.

We agree no extension is warranted and conclude termination of Jacob's parental rights best provides for furthering the long-term nurturing and growth of the children and their physical, mental, and emotional condition and needs.[10] *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) ("We acknowledge the substantial progress [the parent] has made on her rehabilitation journey. Given the history revealed in the record of this case, the journey is likely a long one and it is far from complete. While [the parent] commendably continues over time to intently focus on her sobriety and a healthy reentry to life . . . [the child] needs permanency and stability now.").

Finally, Jacob has not shown a permissive section 232.116(3) exception should be applied here.[11] *See A.S.*, 906 N.W.2d at 476. Consequently, we affirm.

**AFFIRMED.**

---

[10] *See* Iowa Code § 232.116(2) ("In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.").

[11] Under section 232.116(3), the court may elect not to terminate parental rights under particular circumstances. Jacob asserts termination is not necessary because the children are in their mothers' legal custody and he has a bond with his children. *See id.* § 232.116(3)(a) ("A relative has legal custody of the child), (c) ("There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.").