**IN THE COURT OF APPEALS OF IOWA**

No. 25-1097
Filed October 29, 2025

**IN THE INTEREST OF J.F., K.F., Y.F., and K.F.,
Minor Children,**

**J.M.-T., Father,**
        Appellant,

**K.F., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.


A mother and father separately appeal the termination of their parental rights to four and three children respectively. **AFFIRMED ON BOTH APPEALS.**


Michael A. Horn of Horn Law Offices, Des Moines, for appellant father.

Lori M. Holm, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Teresa Pope of Pope Law PLLC, Des Moines, guardian ad litem for minor children.

Sarah Dewein, Urbandale, attorney for minor children K.F. and Y.F.

Heidi Miller of Des Moines Juvenile Public Defender, Des Moines, attorney for minor children J.F. and K.F.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**BULLER, Judge.**

A mother appeals termination of her parental rights to four children born between 2012 and 2017. The father of the three youngest children separately appeals the termination of his parental rights. The putative father of the oldest child also had his parental rights terminated, but he does not appeal. After considering the arguments properly presented in the mother's and father's petitions on appeal, we affirm.

In May 2022, the parents signed a consent to give the grandmother temporary custody of the children. In July, after the mother assaulted the grandmother in the presence of at least one child, the Iowa Department of Health and Human Services (HHS) conducted a child protective assessment for allegations against the parents concerning substance abuse, denial of critical care, and physical abuse. HHS found two allegations of denial of critical care credible—for failure to supervise and marijuana use in the children's presence. An HHS worker noted the children's health was poor as each had "lice and a skin condition." At some point the parents relocated to Puerto Rico, and in October the grandmother was appointed as emergency temporary custodian. After the parents returned to Iowa, a child-in-need-of-assistance (CINA) petition was filed for each child. The children were each adjudicated CINA in November 2023 and formally placed with the grandmother.

HHS was concerned with the parents' recurrent drug abuse, their mental health, and general parenting ability. HHS recommended that the parents complete substance-abuse and mental-health evaluations (and follow any

subsequent recommendations from those evaluations), comply with random drug screenings, and participate in a parenting course.

The parents had completed a substance-abuse treatment program but relapsed in their marijuana use and tested positive on or failed to attend several subsequent drug tests. The parents attended two parenting classes in the six months between the permanency hearing in November 2024 and the termination trial the following March, despite having access to online classes since August. Both parents failed to seek mental-health services because, in the mother's words, "[the therapist] said there was no reason for him to see me because what I was going through was something normal to feel sad about[,]" and the father said "I don't see a reason for me to be seeing a psychiatrist or anything like that."

Each child is in individual therapy; two children have been diagnosed with and are medicated for depression. One child is deaf with a cochlear implant and participates in speech therapy. And two others are medicated for asthma. An HHS worker testified that the grandmother's home was safe, and the children have expressed the desire to continue to live with her. This sentiment was echoed by their guardian ad litem (GAL). One child is openly hostile to reunification and visits with the mother, to the point it affects her mental health. The juvenile court suspended visits until HHS determined—with therapeutic input—they would be appropriate for the child; HHS never reached that determination. As of trial, the mother had not seen this child in two years.

Over the life of the case, the parents never progressed past two two-hour supervised visits per week. Even then, the parents were not consistent with attendance. During their involvement with the juvenile court, the mother hasn't

had stable employment, while the father had somewhat stable seasonal employment. As of trial, they were living in a relative's five-member household to save money for an apartment. The father was unsure which school district the children would be enrolled in if he were to gain custody. And both parents believed that the children could be immediately returned to their care; the mother believed she did everything HHS asked of her and the father could not recall the safety concerns raised at previous court proceedings.

HHS, the county attorney, the children's GAL, the attorneys representing the children, and the guardian's attorney all recommended termination of parental rights. The juvenile court terminated both parents' parental rights under Iowa Code section 232.116(1)(f) (2025). The mother and father separately appeal, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory elements.** The mother's petition only challenges the fourth element under paragraph (f), which requires "clear and convincing evidence that at the *present time* the child[ren] cannot be returned to the custody of the child[ren]'s parents." Iowa Code § 232.116(1)(f) (emphasis added). She argues that she would continue her counseling and mental-health treatment after reunification, thereby becoming a safe custodian at some indeterminate point in the future. But the statutory language requires us to look at the time of termination—not a hypothetical future date—to determine whether the parents can resume custody. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). And the mother has not even acknowledged her mental-health needs exist (let alone adequately addressed them), nor has she completed a parenting course in the nearly sixteen months since the children were removed. *Cf. In re H.R.K.*,

433 N.W.2d 46, 50 (Iowa Ct. App. 1988) ("[T]he requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs."). The mother's disregard for her own mental health and ignorance of her children's mental-health needs weighs against reunification. And mother's testimony makes it clear she has not addressed the safety concerns with physical abuse. The court noted "[t]he parents did virtually nothing to remedy [the children's fear of living with them] other than try to participate in visitation which did not ameliorate the concerns." We, like the juvenile court, find clear and convincing that the children cannot be returned to the mother's custody.

Likewise, to the extent the father challenges the same element, he argues that he substantially followed the court's orders in seeking substance-abuse treatment and that he has the capacity and resources to resume custody regardless of whether he has complied with every aspect of HHS's case plan. He points to his gainful (albeit seasonal) employment and housing. But even more than the mother, the father has not taken the removal of the children seriously. Like the mother, he recurringly tested positive for marijuana use after completing substance-abuse treatment. He dismissed working on his mental health, testifying: "I'm not doing [therapy] because I don't see a reason for me to be seeing a psychiatrist or anything like that." He also only completed two parenting sessions despite having access to online materials for nearly seven months. He wasn't sure which school district the children would be enrolled in if he gained custody because he doesn't "have contact with [the children] or contact with the school." When

asked, he couldn't recall the safety concerns the court instructed him to address before he could regain custody.

The juvenile court found "there had been no substantial change" in either parent's conduct in the year leading to the termination trial and "[the parents] were unable to identify any substantial service engagement to address the parenting concerns or substance use concerns." While "failure to comply with [HHS]'s case plan cannot be considered grounds to terminate parental rights, such a failure can be considered evidence of the parent's attitude toward recognizing and correcting the problems which resulted in the loss of custody." *In re J.L.P.*, 449 N.W.2d 349, 352 (Iowa 1989). We agree with the juvenile court that the father's failure to meaningfully address his underlying problems precluded him from resuming custody.

**Best interests.** The mother next argues termination is not in the children's best interests because "[a]ny danger perceived by not terminating could be addressed through continued individual therapy and counseling." In assessing best interests, we give primary weight to the children's safety, the best placement for furthering their long-term nurturing and growth, and the children's physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). On review, we agree with the juvenile court that termination is in these children's best interests. To reiterate, the mother has made little—if any—progress toward resolving her problems with mental health, substance abuse, or parenting. The children have lived with the grandmother for more than three years, where they are receiving mental-health treatment and report feeling secure. The children's fear of returning to the mother's care highlights their need for the permanency,

stability, and safety offered by termination and adoption. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) ("[T]he child's safety and need for a permanent home are paramount concerns."). Similarly, the father has made little progress over the life of the case, and the children deserve and need stability and permanency.

**Permissive exceptions.** The mother urges that her bond with the children and placement with a relative supports a permissive exception to thwart termination. On this point, the court noted, "[i]f anything, the bond between these children and their parents seems somewhat less pronounced given what the children report about not wanting to return to parental custody." We agree. There is no evidence of a bond that would convince us by clear and convincing evidence that termination would be detrimental to the children and we should invoke that permissive exception on this record. *See* Iowa Code § 232.116(3)(c); *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the child's best interests).

The father makes only a passing reference to the bond exception by means of an outdated statute citation and no accompanying argument or reference to the record. We find this claim waived. In termination cases, parents have the burden of proving permissive exceptions. *In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025) (en banc). "Where a party has failed to present any substantive analysis or argument on an issue, the issue has been waived." *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013). And even if the claim had been briefed, the same issues discussed with the mother's claim are present here. We are not persuaded to apply the permissive exception.

Both the mother and father alternatively suggest we create a guardianship with the grandmother and decline termination under the exception in Iowa Code section 232.116(3)(a).  Like the juvenile court, we reject this alternative.  Our courts have often said "a guardianship is not a legally preferable alternative to termination."  *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation omitted).  We consider all the surrounding circumstances, including the age of the children, the length of removal, the relationship between the parent and the potential guardian, and "the availability of other viable permanency options."  *See id.* at 478.  The juvenile court found the parents and grandmother's relationship "has continually degraded over time" and that a guardianship wouldn't be beneficial for the children.  This alternative is especially confusing since the mother's petition accuses the grandmother of poisoning the children's view of the parents, using them to obtain state funds, and refusing to allow visits for the past year.  These allegations are not supported by the record.  We note that HHS's case manager and the children's GAL recommended termination rather than the creation of a guardianship after personally observing all parties involved.  *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is significant to us that neither the third-party service providers nor the GAL believed [the child] could be safely returned to her parents at the time of trial.").  We affirm the court's ruling.

**AFFIRMED ON BOTH APPEALS.**