# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1956
Filed February 11, 2026

————————————

**In the Interest of A.B. and M.B., Minor Children,**

**J.C., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Shelby County,
The Honorable Charles D. Fagan, Judge.

————————————

**AFFIRMED**

————————————

Matthew J. Hudson, Harlan, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

William T. Early, Harlan, attorney and guardian ad litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

A mother appeals[1] the termination of her parental rights to A.B. (born 2018) and M.B. (born 2021). She argues (1) there was insufficient evidence supporting the grounds for termination, (2) the State failed to make reasonable reunification efforts, (3) termination of her parental rights is not in the best interests of the children, and (4) the State failed to prove that the children could not be returned to the mother at the time of termination. Upon our review, we affirm the termination of the mother's parental rights.

## BACKGROUND FACTS AND PROCEEDINGS

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in May 2024 when they received a report that the mother was using methamphetamine in the presence of one of the children. The report indicated the mother was unresponsive in her front yard and at some point, ran towards the home and shoved the child to the ground.

HHS implemented a safety plan that placed the children with their maternal grandparents. The mother was admitted to the hospital where she tested positive for benzodiazepines, amphetamines, and THC.

In June 2024, the mother left the state to attend a funeral. At this time, HHS was unable to contact her. When the mother returned the call to HHS she informed them that she attempted suicide by overdose and had a mental breakdown due to the death in her family. When asked about pushing the child, the mother justified the behavior by stating she did not want the child to see her being arrested and told the child protective worker (CPW) "any parent would do the same." The mother also refused to complete drug

---

[1] The father's parental rights were also terminated. He does not appeal.

screenings and failed to provide the CPW with her medical marijuana card or contact information for the children's father. This resulted in a founded child protective assessment.

The following month, the State filed a petition alleging A.B. and M.B. to be children in need of assistance (CINA) under Iowa Code section 232.96A(2), (7), and (10) (2024). The juvenile court adjudicated the children to be CINA and ordered them placed in the custody of HHS for placement with the maternal grandparents. The court also ordered HHS to provide the mother with services including substance use and mental health evaluation and treatment.

By September 2024, the mother had made little progress. She was in communication with HHS and was diagnosed with depression, anxiety, psychotic, and post-traumatic stress disorder. She was compliant with her prescription medication and continued to deny she used illegal controlled substances. However, she was not currently attending therapy as recommended. The mother also attributed shoving her child to a "bad reaction" to her prescription medication. And she had not completed the substance use or mental health evaluations ordered by the juvenile court. The mother also refused to sign release forms for HHS to access information. The juvenile court found reunification remained the permanency goal for the children.

In January 2025, the juvenile court held a review hearing. The mother had not completed any of HHS's requested drug screenings. She indicated she had completed her mental health and substance use evaluations and indicated she was seeking inpatient mental health treatment. However, she did not sign the release of information, so HHS was unable to confirm whether she had actually completed these screenings. Due to this lack of

progress, the juvenile court then changed the permanency goal to reunification or termination of parental rights.

The mother's progress unraveled in April 2025, when the Shelby County Sheriff's Office was called to the maternal grandparents' home because the mother had gotten into a verbal altercation. The mother was then arrested for an active warrant for child endangerment that stemmed from the incident that led to HHS's involvement in this case. Law enforcement reports indicate the mother was intoxicated or in poor mental health during her arrest as she tried to get away from officers, and she head-butted a dresser within the home once restrained.

And progress continued to further unravel by the May 2025 permanency hearing. For much of the pendency of this case, the mother had been staying with her parents in Earling, Iowa, but they asked her to leave. So, the mother then began staying with a friend. The mother remained unemployed for the entirety of the CINA matter. HHS was unable to confirm if the mother followed through on inpatient treatment or mental health and substance use evaluations. She had also continued not to submit to drug testing. Citing concerns regarding the children's safety given the mother's mental health and substance use concerns, and the mother's lack of consistent participation in services, the juvenile court changed the permanency goals for the children to termination of parental rights.

In June 2025, the State filed a petition to terminate both the mother's and father's parental rights. The petition alleged statutory grounds under Iowa code sections 232.116(1)(e), (f), and (l) (2025). After a hearing, the juvenile court granted the State's petition. The mother now appeals.

4

## STANDARD AND SCOPE OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). First, we "determine whether any ground for termination under section 232.116(1) has been established." *Id.* If we conclude affirmatively, we next "determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. If we conclude section 232.116(2) supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* at 220. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

## DISCUSSION

I.    Statutory Grounds

We begin with the grounds for termination.[2] When the district court terminates an individual's parental rights on more than one statutory ground,

---

[2] In Issue II of the mother's petition, it states the issue as "Did the trial court err in terminating the father's parental rights[?]" We believe the mother was seeking to challenge the grounds supporting the termination of her parental rights. To the extent she is challenging the termination of the father's parental rights, she lacks the standing to do so. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) ("Dad does not have standing to contest termination of Mom's parental rights.").

we may affirm termination on any one of the cited grounds we find supported in the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Under Iowa Code section 232.116(1)(e), a parent's parental rights may be terminated if (1) the child has been adjudicated to be a CINA, (2) the child has been removed from the parent's physical custody of for at least six consecutive months, and (3) the parent had not maintained significant and meaningful contact with the child during the previous six consecutive months and made no reasonable efforts to resume care of the child despite being given the opportunity to do so. Defining significant and meaningful contact, Iowa Code section 232.116(1)(e)(3) states:

> For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

The children were adjudicated as CINA under Iowa Code sections 232.96A(2), (7), and (10) on August 21, 2024. And at the time of termination, the children had been removed from the mother's physical custody for more than fifteen months. So, we find clear and convincing evidence supports the first two elements.

We also find the mother has not maintained significant and meaningful contact with the children despite being given opportunity to do so. Throughout the fifteen months the underlying case was active, the mother never graduated from supervised visitation. She was absent from Iowa for four consecutive months and regularly left Iowa for Oklahoma. Further, her continued refusal to actively cooperate with HHS demonstrates her lack of

6

commitment to the permanency plan. *See In re T.S.*, 868 N.W.2d 425, 437 (Iowa Ct. App. 2015) (affirming termination under paragraph (e) where parent did not address "substance abuse or mental health issues, and have not made a genuine effort to address these issues"). While the mother's substance use and mental health concerns remain and she has not taken an active approach to addressing these concerns, we find the grounds for termination under Iowa Code section 232.116(1)(e) were established. Accordingly, we affirm and do not address the other grounds for termination that the juvenile court relied on. *See A.B.*, 815 N.W.2d at 774.

II.     Reasonable Efforts

Next, we address the mother's claim that the State failed to make reasonable efforts to reunify the children with the mother. The State has a duty to make "reasonable efforts" towards reunification by working "to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102A(1)(a). But "parents have a responsibility to object when they claim the nature or extent of services is inadequate. A parent's objection to the sufficiency of services should be made early in the process so appropriate changes can be made." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) (cleaned up). Upon our review of the record, we find the mother never objected or otherwise brought the issue of reasonable efforts to the attention of the juvenile court, and even on appeal has not identified any services she was not provided. Therefore, we find the mother failed to preserve error on this issue.

III.    Best Interests

Finally, we consider whether termination was in the children's best interests.  In doing so, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).

We "look to the child's long-range as well as immediate interests." *J.H.*, 952 N.W.2d at 171 (citation omitted).  The best-interests analysis requires we look to "what the future holds for the child if returned to the parents.  When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *Id.* (citation omitted).

Here, the mother has had continued mental health and substance use concerns.  The substance use concerns, and the children's exposure to methamphetamine alone weighs towards finding termination is in the children's best interests.  *See J.P.*, 2020 WL 110425, at *2 ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."); *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017) ("Methamphetamine is a scourge.").

Further, over the course of this case, the juvenile court has ordered the mother to participate in mental health and substance use evaluations and treatment.  The mother has not meaningfully participated in drug testing as requested by HHS. Additionally, she has told the juvenile court on multiple occasions that she participated in evaluations, but she refused to sign releases for HHS to be able verify that information.  And the mother has never acknowledged that her methamphetamine use led her to push her child to the ground, and that lack of acceptance weighs in favor of termination being in

the children's best interest. *See In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa Ct. App. 1988) ("[T]he requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs."). The children reside together with their maternal grandparents who are willing to serve as a permanent home for both children. We find termination of the mother's parental rights is in the children's best interests.

## CONCLUSION

Upon our review, we find clear and convincing evidence supports termination under Iowa Code section 232.116(1)(e), termination is in the children's best interests, and the mother did not preserve error on her reasonable efforts argument. Accordingly, we affirm the termination of the mother's parental rights.

**AFFIRMED.**